UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEVEN MENSAH-YAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1948 (RMC) |
| | ) | |
| MICHAEL RADEN, *et al.*, | ) | |
| | ) | |
| Defendants.[1] | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the Motion to Dismiss Plaintiff's "Revised" Amended Complaint Pursuant to Rule 12(b)(2) and (6) filed on behalf of the Borough of Donora and its police department [ECF No. 23] and the Federal Defendants' Motion to Dismiss [ECF No. 25]. For the reasons discussed below, the Court will grant both motions.

I. BACKGROUND

In order to put Plaintiff's claims in the proper context, the Court refers to the allegations of Plaintiff's Complaint for Violation of Civil Rights ("Compl.") [ECF No. 1], his Revised Amended Complaint [ECF No. 22] ("Am. Compl."), exhibits submitted with the Memorandum of Points and Authorities in Support of Federal Defendants' Motion to Dismiss [ECF No. 25] ("Fed. Mem."), and reported cases.

---

[1] It appears that "Radens" is the correct spelling of defendant Michael Radens's last name. *See* Memorandum of Points and Authorities in Support of Federal Defendants' Motion to Dismiss, Ex. (Radens Decl.) [ECF No. 25-3]. For administrative convenience, the docket and case caption remain unchanged.

1

Plaintiff, a native and citizen of Ghana, was admitted to the United States in May 2005 as a nonimmigrant F1 student "for a temporary period not to exceed the duration of [his] status," yet he remained in the United States after completion in December 2007 of his nonimmigrant F1 student program without having obtained authorization from Citizenship and Immigration Services. *See* Fed. Mem., Ex. R (Notice to Appear) at 3. Plaintiff and three codefendants "were charged on September 15, 2009 by a grand jury sitting in the Western District of Pennsylvania with conspiring to commit an offense against the United States, in violation of 18 U.S.C. § 371. Specifically, the individuals were charged with conspiring to make, utter, and possess counterfeit securities in violation of 18 U.S.C. § 513(a)." *United States v. Mensah-Yawson*, 489 F. App'x 606, 607 (3d Cir. 2012).[2] A jury found Plaintiff guilty, Fed. Mem., Ex. A (Verdict, *United States v. Mensah-Yawson*, Crim. No. 09-276 (W.D. Pa. Dec. 15, 2010)), and the court sentenced him to time served and ordered him to pay restitution totaling $43,645.98. *Id.*, Ex. A (Judgment in a Criminal Case, *United States v. Mensah-Yawson*, Crim. No. 09-276 (W.D. Pa. Jan. 7, 2011)) at 2, 5-6.

On January 1, 2011, the Department of Homeland Security ("DHS") issued Plaintiff a Notice to Appear and charged him with removability for having remained in the United States longer than permitted. *See id.*, Ex. D (Memorandum and Order) at 1. On conclusion of the criminal proceedings, Plaintiff was turned over to U.S. Immigration and Customs Enforcement ("ICE") pending his removal from the United States. *See id.*, Ex. L

---

[2] Generally, Plaintiff obtained legitimate payroll checks from individuals employed by three corporate entities, used these legitimate checks to create counterfeit checks with software purchased and installed on Plaintiff's laptop computer, engaged co-conspirators to negotiate the counterfeit checks at businesses and banks, and received the bulk of the proceeds. *See generally* Fed. Mem., Ex. A (Indictment, *United States v. Mensah-Yawson*, Crim. No. 09-276 (W.D. Pa. filed Sept. 15, 2009)) ¶¶ 2-6.

(Record of Deportable/Inadmissible Alien) at 3.  While conceding to the charge of removability, *see id.*, Ex. D at 1, Plaintiff sought release from custody pending the appeal of his criminal conviction, *see generally id.*, Ex. B (Motion for Bond Redetermination).  On April 28, 2011, an Immigration Judge released Plaintiff on bond.  *Id.*, Ex. C (Order of the Immigration Judge with Respect to Custody); *see also* Am. Compl. ¶ 17.

Plaintiff filed an Application for Cancellation of Removal for Certain Nonpermanent Residents on August 10, 2011, Fed. Mem., Ex. D at 1, and a hearing on the application was set for September 27, 2013.  *Id.*, Ex. F at 1.  Meanwhile, the United States Court of Appeals for the Third Circuit affirmed Plaintiff's convictions.  *See Mensah-Yawson*, 489 F. App'x at 612; *see also* Fed. Mem., Ex. K (Judgment, *United States v. Mensah-Yawson*, No. 11-1103 (3d Cir. July 12, 2012)).

"On November 15, 2012 . . . between the hours of 11:00 and 14:00," unidentified officers of the Donora Police Department "conducted a traffic stop of [a] Sport Utility Vehicle [on its way] from Coral Township to Donora, [Pennsylvania]."  Am. Compl. ¶ 18.  Plaintiff's then-fiancée drove the vehicle, "[P]laintiff was seated in the front passenger seat, [and] one other adult [was seated] in the rear . . . with a [child]."  *Id*.  The officers demanded that Plaintiff show identification, *id*. ¶ 19, and "[a]pproximately three [to] five minutes [after he] provid[ed] . . . two forms of identification[]," the officers informed Plaintiff that "federal officers [were] looking for [him.]"  *Id*. ¶ 20.  Shortly thereafter, Michael Radens, "who[] identified himself as an attache to the Homeland Security Investigation," and David Anderchak, a United States Postal Inspector, Compl. at 8 (page numbers designated by ECF), arrived on the scene and arrested Plaintiff, *see id.*; *see also* Am. Compl. ¶¶ 18, 20.  Plaintiff "was booked into the Allegheny County Jail and

was placed into the custody of ICE[.]" Fed. Mem., Ex. L at 2. Since then, Plaintiff apparently has remained in custody pending removal to Ghana. *See id.*, Ex. R at 4.

According to Plaintiff, the federal agents and the Donora police officers conspired to conduct an "unlawful frisk search [and] seizure" of his person and to cause his unlawful detention, Am. Compl. ¶ 21, in violation of his Fourth, Fifth and Fourteenth Amendment rights, *see id.* ¶¶ 21, 25. In addition, Plaintiff has alleged that Mr. Radens involved himself in or interfered with ongoing removal proceedings in ways both contrary to federal law and in violation of rights protected under the Fifth and Fourteenth Amendments to the United States Constitution. *See id.* ¶¶ 24, 26-29. As a result, Plaintiff has been injured, in that he has sustained "severe mental, psychological and emotional pain, severe . . . emotional distress and continual suffering to date." *Id.* ¶ 32. He brought this action under 42 U.S.C. §§ 1983, 1985 and 1986, the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. §§ 2671-80, and the Alien Tort Claims Act ("ATCA"), *see* 28 U.S.C. § 1350. *See* Am. Compl. ¶¶ 8-11. Among other relief, Plaintiff demands an award of $5 million. *See id.* ¶¶ 35, 36(i).

## II. DISCUSSION

### A. *Plaintiff's Claims Against the Donora Defendants*

Plaintiff brings assorted civil rights claims against unidentified Donora Police Department officers, the Donora Police Department, and the Borough of Donora, Pennsylvania ("Donora Defendants") under 28 U.S.C. §§ 1983, 1985 and 1986.[3] *See* Am. Compl. ¶¶ 1, 6, 8. The Donora Defendants construe the Amended Complaint as raising "both *respondeat superior*

---

[3] Plaintiff sues "John Doe's [sic] of Donora Police Department 1-10 . . . in their individual and official capacities." Am. Compl. ¶ 1. The identities of these police officers are unknown, and Plaintiff provided no information that could have enabled the Clerk of Court and the United States Marshals Service to issue summonses and serve process on them.

and conspiracy-based federal civil rights claims" against them. Mem. of Law in Support of Rule 12(b)(2) and (6) Mot. to Dismiss Pl.'s Revised Am. Compl. [ECF No. 24] ("Donora Defs.' Mem.") at 2. They move to dismiss on the grounds that the Court lacks personal jurisdiction over them, *see generally id*. at 4-7, and that they cannot be liable under 42 U.S.C. § 1983 on a *respondeat superior* theory, *see generally id*. at 8-9.

1. Personal Jurisdiction

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Donora Defendants move to dismiss because, based on "the meager facts contained in [the] Amended Complaint," Plaintiff fails to demonstrate that this Court has personal jurisdiction over them. Donora Defs.' Mem. at 5. Plaintiff maintains that this Court has personal jurisdiction over these defendants for two reasons. First, he relies on the District's long-arm statute. *See* Am. Compl. ¶ 12. Second, by characterizing this action as "a Conspiracy suit," Pl.'s Mot. in Opp'n to Defs.' "Borough of Donora and Police Department" "Motioin [sic] to Dismiss" [ECF No. 29] ("Pl.'s Opp'n") at 2, Plaintiff asserts that this Court may exercise personal jurisdiction over the Donora Defendants because they conspired with the federal defendants, counsel for whom is located in the District of Columbia, to violate his constitutional rights. *See* Am. Compl. ¶¶ 7, 13, 15.

Plaintiff bears the burden of establishing a factual basis for the Court's exercise of personal jurisdiction over each Defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). If Plaintiff is to survive the Donora Defendants' motion, he "must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). In other words, he must allege specific facts connecting these defendants to this forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). The Court is mindful of its obligation to construe

a *pro se* complaint liberally, *see, e.g., Howerton v. Ogletree*, 466 F. Supp. 2d 182, 183 (D.D.C. 2006), but a *pro se* plaintiff is not "freed from the requirement to plead an adequate jurisdictional basis for [his] claims," *Gomez v. Aragon*, 705 F. Supp. 2d 21, 23 (D.D.C. 2010).

The Court determines whether personal jurisdiction may be exercised "by reference to District of Columbia law." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). "A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. "Exercise of this so-called 'general jurisdiction' requires that [Defendants'] contacts within the forum be 'continuous and systematic' in order for [them] to be forced to defend a suit arising out of any subject matter unrelated to [Defendants'] activities within the forum." *Segelstrom v. Citibank, N.A.*, 76 F. Supp. 3d 1, 11 (D.D.C. 2014) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)), *aff'd,* 617 F. App'x 4 (D.C. Cir. 2015). Nowhere in the complaint does Plaintiff allege that the Donora Defendants are domiciled or maintain a principal place of business in the District of Columbia. In this circumstance, the Court engages in a two-part inquiry to determine whether it may exercise personal jurisdiction over non-resident defendants. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

The Court first must determine whether jurisdiction may be exercised under the District of Columbia's long-arm statute, which in relevant part provides:

> A District of Columbia court may exercise personal jurisdiction over a person . . . as to a claim for relief arising from the person's –
>
> (1) transacting any business in the District of Columbia;

6

>   (2) contracting to supply services in the District of Columbia;
>
>   (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
>   (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . .

D.C. Code § 13-423(a). Then the Court must determine whether its exercise of jurisdiction comports with due process. *See id.*; *First Chicago Int'l*, 836 F.2d at 1377. This second component of the analysis turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted). Minimum contacts must arise from "some act by which the [Defendants] purposefully avail[ themselves] of the privilege of conducting activities within the [District of Columbia], thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In other words, Plaintiff must demonstrate that the Donora Defendants' "conduct and connection with the [District of Columbia] are such that [they] should reasonably anticipate being haled into court" in this forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

On review of Plaintiff's submissions, the Court concurs with the Donora Defendants' assessment that the "amended pleading is without any fact or reasonable inference therefrom indicating that the Borough [of Donora], its police department or any agent of either ever transacted business in the District of Columbia." Donora Defs.' Mem. at 5. Nor does the Court identify a single factual allegation to show that the Donora Defendants contracted to

7

supply services or caused tortious injury in the District of Columbia by any act committed here. And the final basis for application of the long-arm statute is equally unsupported. Plaintiff not only fails to allege that the Donora Defendants caused tortious injury in the District of Columbia by an act committed outside of the District, but also fails to allege that these Defendants have engaged in any conduct connected to this forum.

"Courts consider conspiracy jurisdiction a form of long-arm jurisdiction in which the defendant's 'contact' with the forum consists of the acts of the defendant's co-conspirators within the forum." *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 79 (D.D.C. 2004) (citing *Second Amendment Found.*, 274 F.3d at 523). Plaintiff's success on this conspiracy jurisdiction approach depends on his ability to show "(1) a conspiracy (2) in which the defendant participated and (3) a co-conspirator's overt act within the forum, subject to the long-arm statute and in furtherance of the conspiracy." *Id*. at 79-80 (citing Jung v. Ass'n of Am. Med. Colleges, 300 F. Supp. 2d 119, 141 (D.D.C. 2004)) (footnote omitted). He fails to meet his burden, principally because the alleged overt acts giving rise to his claims – the traffic stop and arrest in Pennsylvania – did not occur within the District of Columbia.

Furthermore, the allegations of conspiracy in the Amended Complaint, *see, e.g.,* Am. Compl. ¶¶ 7, 21, are entirely conclusory. The elements of a civil conspiracy are: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (citation omitted). Plaintiff's bare assertions of the existence of an agreement among the conspirators cannot sustain a conspiracy claim. *See, e.g., McCreary v. Heath*, No. 04-0623, 2005 WL 3276257, at *5

8

(D.D.C. Sept. 26, 2005) (dismissing conspiracy claim where the "complaint fails to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants").[4]

Whether or not Defendants conspired with one another to harm Plaintiff, it is apparent that Plaintiff fails to allege facts to justify exercise of personal jurisdiction over the non-resident Donora Defendants. The Court concludes that it lacks personal jurisdiction over these Defendants, and their motion to dismiss on this ground will be granted.

### 2. *Respondeat Superior*

It appears that Plaintiff deems the Borough of Donora responsible for the unconstitutional actions of the unidentified police officers, *see* Am. Compl. ¶ 33, and brings a claim against it under 42 U.S.C. § 1983, which in relevant part provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[4] Plaintiff's failure to allege adequately the existence of a conspiracy impacts his conspiracy-based civil rights claims. Generally, 42 U.S.C. § 1985(1) "prohibits conspiracies to interfere with the performance of duties by federal officers," *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 839 n.1 (1983), and "[§]1985(3) provides a cause of action against two or more persons who participate in a conspiracy motivated by class-based discriminatory animus," *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (citations omitted). Plaintiff's conclusory allegations of conspiracy do not suffice, and his § 1985 claims fail. Because "[t]he language of [42 U.S.C. § 1986] establishes unambiguously that a colorable claim under § 1985 is a prerequisite to stating an adequate claim for neglect to prevent under § 1986," *Thomas v. News World Comm'cns,* 681 F. Supp. 55, 62 (D.D.C. 1988), his § 1986 claim also fails, *see, e.g., Strunk v. U.S. Dep't of Commerce*, No. 09-1295, 2010 WL 960428, at *4 (D.D.C. Mar. 15, 2010).

*Id*.  The Borough of Donora presumably is municipality and is considered a "person" for purposes of § 1983.  *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978) (defining "person" to include municipalities and local government entities).  "[I]n considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry."  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  The Court "must determine whether the complaint states a claim for a predicate constitutional violation," and it "must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation."  *Id.* 1306.  For purposes of this discussion, the Court presumes without deciding that Plaintiff adequately alleges violations of rights protected under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.  Plaintiff's § 1983 claim fails nevertheless.

"[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."  *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008) (citing *Monell*, 436 U.S. at 694).  A plaintiff must "allege[] an affirmative link . . . such that a municipal policy was the moving force behind the constitutional violation," *Baker*, 326 F.3d at 1206 (internal quotation marks and citations omitted), but the  pleading here fails to set forth any allegations of the existence or execution of a Donora policy, custom or practice resulting in the injuries he claims to have suffered.  This pleading defect is fatal.  *See, e.g., Yancey v. District of Columbia*, 991 F. Supp. 2d 171, 179-80 (D.D.C. 2013) (dismissing § 1983 claim where plaintiff "has not provided any indication that her situation was the result of any custom, practice or policy of the District").

Furthermore, as the Donora Defendants note, neither "the Borough [nor] its police department [can] be held liable under 42 U.S.C. § 1983 merely for employing police officers

who allegedly violated municipal, state or federal policy or law[.]" Donora Defs.' Mem. at 8. As the Supreme Court instructs, "[r]*espondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The Court concludes that Plaintiff fails to state a viable § 1983 claim against the Donora Defendants, and their motion to dismiss will be granted.

### B. Plaintiff's Claims Against the Federal Defendants

1. Claims Against Radens and Anderchak in their Individual Capacities

Radens and Anderchak move to dismiss on the ground that, absent proper service of process and long-arm jurisdiction, this Court is without personal jurisdiction over them. *See generally* Fed. Mem. at 10-15. For purposes of this Memorandum Opinion, the Court presumes without deciding that service of process has been effected properly on these defendants. Their motion to dismiss for lack of personal jurisdiction will be granted for substantially the same reasons as set forth above with respect to the Donora Defendants.

Radens and Anderchak are Pennsylvania residents whose principal place of employment at all times relevant to the complaint was Pennsylvania. Fed. Mem., Ex. (Decl. of David Anderchak ¶¶ 2-3 and Decl. of Michael Radens ¶¶ 2-3). The mere assertion that Radens and Anderchak are the employees of federal government agencies with headquarter offices in the District of Columbia, *see* Pl.'s Opp'n at 24-25, does not establish contacts with this district to justify the exercise of this Court's jurisdiction over them, *see, e.g., Hampton v. Comey*, No. 14-CV-1607, 2016 WL 471277, at *6 (D.D.C. Feb. 8, 2016) (finding that employment with agency having Washington, D.C. headquarters does not establish minimum contacts). Absent factual allegations showing that these defendants reside or conduct business in the District of Columbia, or that any of the conduct giving rise to Plaintiff's claims occurred in the District of Columbia,

Plaintiff fails to demonstrate that this Court's exercise of personal jurisdiction over Radens and Anderchak in their individual capacities is proper.

2. Claims Against Radens and Anderchak in their Official Capacities

Insofar as Plaintiff brings tort claims against Radens and Anderchak in their official capacities and invokes the Federal Tort Claims Act, *see* Am. Compl. ¶¶ 9, 15, the federal defendants argue that any such claims must fail, *see* Fed. Mem. at 34-39.

"Federal district courts are courts of limited jurisdiction," and "it is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The plaintiff therefore bears the initial burden of establishing that the Court has subject matter jurisdiction over his negligence claim. *See id.*; *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 104 (D.D.C. 2007). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The FTCA allows a plaintiff to file suit for claims of "personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see id*. § 2679(b)(1). There are limitations and exceptions to the FTCA, however, which require dismissal of Plaintiff's tort claims.

1. Naming the United States as Defendant

"Under the FTCA, [a] plaintiff[] may sue the United States in federal court for state-law torts committed by government employees within the scope of their employment." *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008) (citing 28 U.S.C. §§ 1346(b), 2671-80).

Here, the government certifies that Radens and Anderchak "were acting within the scope of their employment as employees of the United States at the time of the . . . incidents" alleged in the complaint. Defs.' Mem., Ex. (Certification). Based on the certification, this "tort suit automatically converts to an FTCA action against the United States in federal court; the Government becomes the sole party defendant; and the FTCA's requirements, exceptions, and defenses apply to the suit." *Harbury*, 522 F.3d at 416 (internal quotation marks, citation and footnote omitted).

### 2. Exhaustion of Administrative Remedies

The FTCA requires that a plaintiff exhaust his administrative remedies prior to initiating a lawsuit against the United States:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). Exhaustion is a jurisdictional requirement, *see GAF Corp. v. United States*, 818 F.2d 901, 917-20 (D.C. Cir. 1987), and a plaintiff's "fail[ure] to heed that clear statutory command" warrants dismissal of his claim, *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see Henderson v. Ratner*, No. 10-5035, 2010 WL 2574175, at *1 (D.C. Cir. June 7, 2010) (per curiam) (affirming dismissal of FTCA claim where "[a]ppellant failed to demonstrate that he exhausted his administrative remedies before filing suit in the district court"); *Hammond v. Fed. Bureau of Prisons*, 740 F. Supp. 2d 105, 111 (D.D.C. 2010) (dismissing FTCA claim for lack of subject matter jurisdiction where plaintiff had not "established by a preponderance of the

evidence that he administratively exhausted his FTCA claim with the BOP before commencing this action").

ICE's declarant avers that she searched the "database of administrative FTCA claims submitted to ICE . . . [and] found no records of any . . . claim by Steven Mensah-Yawson." Fed. Mem., Ex. (Tanke Decl.) ¶ 2.  The United States Postal Service's declarant explains she searched the relevant "databases containing information relating to administrative tort claims submitted to the Postal Service and [United States Postal] Inspection Service nationwide," *id*., Ex. (Beatty Decl.) ¶ 3, "using . . . Mensa-Tawson, Mensah-Tawson, Mensa, Mensah, Tawson, Yawson, Mensa-Tawson and Mensa-Yawson" as search terms, yet the searches did "not reflect that an administrative tort claim was received . . . on behalf of anyone using these names," *id*., Ex. (Beatty Decl.) ¶ 4.

Plaintiff argues that "he followed all proper procedure[s] pertaining to administrative tort remedy," Pl.'s Mem. in Support [of] his Opp'n to Def.'s "Fed. Def[s.']" "Mot. to Dismiss" [ECF No. 29] at 2, and produces an "attachment/exhibit and record (certified registered mail record)," *id*. Exs. A-C.  The exhibit appears to be a copy of three "green cards" bearing Plaintiff's name and address only.  At most, the exhibit indicates that three unidentified items had been sent by certified or registered mail on or about May 27, 2014 to unknown recipients.  *See id*., Exs. A-C.  The exhibit does not establish that Plaintiff submitted an administrative tort claim to ICE.  Thus, it appears that Plaintiff has not exhausted his administrative remedies prior to filing this lawsuit; for this reason, the Court lacks subject matter jurisdiction over Plaintiff's FTCA claim.  *See Davis v. United States*, 944 F. Supp. 2d 36, 38-39 (D.D.C. 2013) (dismissing FTCA claim for lack of subject matter jurisdiction where prisoner

plaintiff could show that he prepared a written FTCA claim to the BOP but could not show that BOP actually received it).

### 3. No Recovery of Monetary Damages for Constitutional Torts

Even if Plaintiff had exhausted his administrative remedies, his FTCA claim still would be dismissed. Under the doctrine of sovereign immunity, the United States is immune from suit unless Congress expressly has waived the defense of sovereign immunity by statute. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The FTCA operates as a limited waiver of sovereign immunity rendering the United States subject to suit for certain – but not all – tort claims. *See, e.g., Richards v. United States*, 369 U.S. 1, 6 (1962). The United States is not "liable . . . for constitutional tort claims." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *see Thomas v. United States*, 779 F. Supp. 2d 154, 157 (D.D.C. 2011) (dismissing Eighth Amendment claim for damages brought against the United States, BOP and a BOP official sued in his official capacity); *Nelson v. Williams*, 750 F. Supp. 2d 46, 53 (D.D.C. 2010) ("To the extent that plaintiff demands relief for defendants' violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, these claims must be dismissed."), *aff'd*, No. 10-5429, 2011 WL 2618078 (D.C. Cir. June 23, 2011) (per curiam), *cert. denied*, 132 S. Ct. 1035 (2012). Thus, insofar as Plaintiff demands damages from the United States for alleged violations of constitutionally protected rights, *see, e.g.,* Am. Compl. ¶¶ 33, 35, the there is no remedy under the FTCA.[5]

---

[5] In addition, as the Federal Defendants note, *see* Fed. Mem. at 19-20, venue in this district is improper under 28 U.S.C. § 1402(b), which provides that an FTCA claim "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b).

### *C. Plaintiff's ATCA Claim*

"The elements of a claim under the ATCA are that (1) the plaintiff is an alien; (2) the claim is for a tort; and (3) the tort is committed in violation of the law of nations or a treaty of the United States." *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 99-100 (D.D.C. 2003) (internal quotation marks and citations omitted). Nowhere does Plaintiff identify a violation of the law of nations or a treaty to which the United States is a party. Therefore, Plaintiff fails to state a claim under the ATCA. In addition, it does not appear that venue in this district is proper. The ATCA contains no venue provision. *See Shaoulian-Tehrani v. Khatami*, No. 06 CIV. 6868, 2008 WL 1790386, at *4 (S.D.N.Y. Apr. 21, 2008). If the Court were to look to the place where the underlying actions occurred and where a plaintiff's harms were felt, *see Abecassis v. Wyatt*, 669 F. Supp. 2d 130, 133 (D.D.C. 2009), it appears that a district in Pennsylvania, not the District of Columbia, would be a proper forum for adjudication of Plaintiff's claim.

### III. CONCLUSION

The Court concludes that it lacks personal jurisdiction over the Donora Defendants and Radens and Anderchak in their individual capacities. Further, the Court concludes that Plaintiff fails to state claims under 42 U.S.C. §§ 1983, 1985 and 1986, and under the ATCA. Lastly, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims against Radens and Anderchak in their official capacities. For these reasons, Defendants' motions to dismiss will be granted. An Order is issued separately.

DATE:  March 21, 2016                    _____/s/_____
                                         ROSEMARY M. COLLYER
                                         United States District Judge